FILED
2016 Nov-17  PM 04:07
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| FRANK H. EATON, SR., | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 7:15-cv-01204-LSC |
| UNUM GROUP, et al., | ) ) | |
| Defendants. | ) ) | |
| | ) ) | |

## Memorandum of Opinion

Plaintiff, Frank Eaton, Sr. ("Eaton"), filed this action against Defendants, Unum Group, Provident Life & Accident Insurance Co. ("Provident Life"), and Unum Life Insurance Co. of America ("Unum Life") (collectively, "Defendants"), alleging breach of contract, breach of the covenant of good faith and fair dealing, negligent misrepresentation, unjust enrichment, fraudulent inducement, fraud, conspiracy to defraud, and civil conspiracy. Before the Court are the parties' cross-motions for summary judgment (Docs. 36 and 41), as well as Defendants' motion to exclude certain evidence submitted in support of Eaton's motion for partial summary judgment (Doc. 48). For the reasons stated below, Eaton's motion for partial summary judgment is due to be denied, Defendants'

motion for summary judgment is due to be granted, and Defendants' motion to exclude is due to be granted in part and denied in part.

## I. BACKGROUND

In August 2006, the IRS mailed a Notice of Levy dated August 2, 2006, to Unum Life (the "Levy"), which showed that Eaton owed the IRS $459,483.13 in past-due taxes for the tax years 1992, 1994–1996, and 2000–2004. (Doc. 40 at 16.) The terms of the Levy required Unum Life to surrender to the IRS Eaton's "property and rights to property" that Unum Life "ha[d] or [was] already obligated to pay" to Eaton. (*Id.*) Unum Life determined that it owed the IRS commission payments due to Eaton for the month of August 2006 and sent the IRS two checks totaling $191.12. Unum Life also informed the IRS that Eaton may hold disability insurance policies with its sister corporation, Provident Life. The IRS, however, did not issue a separate Notice of Levy to Provident Life, and Provident Life paid no funds to the IRS on Eaton's behalf.

After the Levy was issued, Eaton made a claim for disability benefits under his insurance policies with Provident Life. Provident Life agreed to make a partial payment to Eaton but determined that his policies were no longer in force because he was not "actively and gainfully employed full-time," as required by the policy terms. (Docs. 41-5 and 41-7.) Provident Life thus refunded the premiums Eaton

had paid by issuing several checks to Eaton in 2008. Eaton continued to dispute his entitlement to additional benefits under the disability insurance policies and eventually filed suit against Provident Life.

While the litigation was pending, the parties reached a settlement whereby Eaton agreed to release his claims in exchange for Provident Life's payment of $108,000. The terms of the parties' settlement are memorialized in a written Settlement Agreement and Release (the "Agreement"), which includes an integration clause. (Doc. 1-1 at 22–30.) The parties finalized the Agreement in late 2009, and the suit was voluntarily dismissed on February 2, 2010 (Doc. 1-1 at 31). The introductory recitals in the Agreement state, in part:

> **WHEREAS**, Provident Life received a Notice of Levy from the [IRS] notifying it of an IRS claim to any disability benefits payable to Eaton.
>
> **WHEREAS**, counsel for Eaton is seeking to obtain a letter from the IRS providing instruction and direction to Provident Life concerning the IRS claim to any money payable to [Eaton].
>
> **WHEREAS**, the Parties wish to resolve this matter and seek a dismissal of this case with an agreement that Provident Life will be obligated to pay the settlement proceeds only upon receipt of satisfactory direction from the IRS that the money can be paid to Eaton or otherwise directing

payment of the settlement proceeds or upon receipt of direction from

Eaton and his counsel that the money should be paid to the IRS.

(Doc. 1-1 at 23.) The final recital is elaborated in an operative provision that states,

in its entirety:

> **1.** **Payment by Provident Life.** Provident Life agrees to pay the total
> sum of [$108,000] (the "Payment"), which will be paid promptly
> upon the receipt by Provident Life of direction from the IRS that the
> money can be paid to Eaton's counsel's client trust account; that a
> portion of the money can be paid to the IRS and a portion be paid to
> plaintiff's counsel's client trust account; or Provident Life receives
> direction from Eaton and plaintiff's counsel that the money should be
> paid to the IRS. The Parties agree that Eaton is responsible for
> providing the direction from the IRS within 18 months of the date that
> the agreement is signed. If Provident Life receives no such
> communication within the 18 month period, Provident Life will
> automatically pay the money to the IRS. The Parties further agree that
> no interest will be paid on the settlement funds. This contingent
> agreement to pay is in compromise of Eaton's disputed claim for
> additional disability benefits under his individual disability policies.

(Doc. 1-1 at 24.)

The Agreement was never signed by either party. By letter dated April 20, 2011, Eaton wrote Defendants' counsel alleging that the Agreement was "fatally flawed" because it falsely claimed that Provident Life had received a Notice of Levy from the IRS. (Doc. 40-2.) Eaton attached an executed copy of the Agreement, with certain language omitted, to this letter. (Doc. 40-2.) Defendants' counsel responded to Eaton's letter on June 15, 2011, stating that it was "ready to perform pursuant to the terms of the Settlement Agreement" to which the parties had agreed in 2009. (Doc. 40-3.) Eaton wrote Defendants' counsel several other letters demanding the settlement funds, including one dated November 3, 2011, which alleged that Provident Life "fraudulently induced [Eaton] to enter into the settlement." (Doc. 38-6.)

Eaton filed the instant action in Alabama state court in June 2015. It was subsequently removed to this Court. After this Court expressed concern that the IRS was not a party to the action, Defendants filed a third-party complaint to interplead the settlement funds and involve the IRS. The parties, including the IRS, then stipulated that "the maximum payoff amount due from Eaton to the IRS as of October 31, 2016, will be $62,893.33." (Doc. 29 at 2.) Provident Life then mailed Eaton a check for the $45,106.67 balance remaining on the $108,000 in

settlement funds. On September 23, 2016, the IRS issued a Notice of Levy to this Court, which represents that as of October 13, 2016, Eaton owes $59,585.42 in past-due taxes and statutory penalties for the tax year 2004. (Doc. 54.)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Avenue CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). In making a motion for summary

judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III.  DISCUSSION

### a.    Breach of Contract

The parties have filed cross-motions for summary judgment with regard to the breach of contract claim. Eaton contends that Provident Life[1] breached the Agreement by failing to produce the Levy, which he claims was a condition precedent to his performance under the Agreement, and by refusing to make payment either to him or to the IRS. Eaton also alleges that Provident Life's attempts to contact the IRS directly and its third-party complaint against the IRS in this action constitute breaches of the Agreement. Provident Life responds that it did not breach the Agreement but rather complied with all its terms. In order to be successful on a claim for breach of contract, Eaton must demonstrate (1) a valid

---

[1] This Court previously dismissed Eaton's breach of contract claims against Unum Group and Unum Life. (Doc. 8.)

contract binding the parties; (2) his own performance under the contract; (3) Provident Life's nonperformance under the contract; and (4) resulting damages. *Barrett v. Radjabi-Mougadam*, 39 So. 3d 95, 98 (Ala. 2009).

Although neither Eaton nor Provident Life signed the Agreement, both parties seem to agree that it is a valid and binding contract. "[P]arties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated." *Am.'s Home Place, Inc. v. Rampey*, 166 So. 3d 655, 659 (Ala. 2014) (quoting *Stiles v. Home Cable Concepts, Inc.*, 994 F. Supp. 1410, 1416 (M.D. Ala. 1998)). In their briefs to this Court, both Eaton and Provident life represent that the Agreement "specifies the binding terms of settlement" between them. (Doc. 37 at 5; Doc. 39 at 4; Doc. 41-1 at 6.) Additionally, the Agreement includes no provision under which the parties have "expressly agreed that the contract [is] not effective until it [is] signed." *Quality Truck & Auto Sales, Inc. v. Yassine*, 730 So. 2d 1164, 1169 n.7 (Ala. 1999). This Court will treat the Agreement as a valid contract binding the parties, as is consistent with the parties' apparent intentions.

With respect to his own performance under the contract, Eaton contends that his performance "has been completely foreclosed" because Provident Life never provided him a copy of the Levy. In short, Eaton claims that Provident Life's

production of the document was a condition precedent to Eaton's performance under the Agreement. "Whether a provision in a contract is a condition precedent depends, not upon formal words, but upon the intent of the parties, to be deduced from the whole instrument." *Bank of Brewton, Inc. v. Int'l Fid. Ins. Co.*, 827 So. 2d 747, 752 (Ala. 2002). The recitals preceding the operative provisions of a contractual document typically do not "control the operative clauses" but may be used to "determin[e] the proper construction of the contract and the parties' intention." *See Gwaltney v. Russell*, 984 So. 2d 1125, 1132–33 (Ala. 2007) (quoting *Ingalls Iron Works Co. v. Ingalls*, 53 So. 2d 847, 849 (Ala. 1951)). The recitals "should be reconciled with the operative clauses, and given effect, so far as possible; but where the recital is so inconsistent with the covenant or promise that they cannot be harmonized, the latter, if unambiguous, prevails." *City of Birmingham v. I.E. Morris & Assocs.*, 54 So. 2d 555, 558 (Ala. 1951).

Eaton appears to base his argument on a recital to the Agreement that reads as follows: "WHEREAS, Provident Life received a Notice of Levy from the Internal Revenue Service ("IRS") notifying it of an IRS claim to any disability benefits payable to Eaton." (Doc. 1-1 at 23.) The plain language of the recital does not suggest, on its own, that Provident Life was required to deliver to Eaton a copy of the Levy before Eaton took any action under the Agreement. Nor does any other

provision—recital or operative—support Eaton's contention. Rather, the Agreement states that Eaton's counsel was "seeking to obtain a letter from the IRS providing instruction and direction to Provident Life concerning the IRS claim to any money payable to [Eaton]" and that the parties agreed "that Provident Life will be obligated to pay the settlement proceeds only upon receipt of satisfactory direction from the IRS . . . directing the payment of the settlement proceeds or . . . from Eaton and his counsel that the money should be paid to the IRS." (*Id.*) An operative provision of the Agreement elaborates that Provident Life would pay $108,000 "promptly upon the receipt by Provident Life of direction from the IRS that money can be paid to Eaton's counsel's client trust account; that a portion of the money can be paid to the IRS and a portion be paid to plaintiff's counsel's client trust account; or Provident Life receives direction from Eaton and plaintiff's counsel that the money should be paid to the IRS." (*Id.* at 24.) This language is not ambiguous, and the language of the recitals is consistent with the operative provision regarding payment of the settlement funds.

Eaton attempts to create an ambiguity by asserting that the Agreement refers to a different Notice of Levy than the one addressed to Unum Life and dated August 2, 2006, and that the Notice of Levy referenced in the Agreement does not exist. Provident Life admits that the recital was "imprecisely worded" but

maintains that only one Notice of Levy was issued to Defendants. (Doc. 41-2 at 17.)
To the extent that ambiguity does exist as to the document identified in the
Agreement, extrinsic evidence is admissible "to clarify the contract." *Marriott
Int'l, Inc. v. deCelle*, 722 So. 2d 760, 762 (Ala. 1998). Both parties agree that Unum
Life received a Notice of Levy dated August 2, 2006, showing that Eaton owed
nearly $500,000 in unpaid taxes to the IRS and making a demand for Eaton's
"property and rights to property" that Unum Life had or was obligated to pay to
Eaton. (Doc. 40 at 16.[2]) After review of its records, Unum Life determined that it
was required to pay the IRS any funds for commissions due to Eaton[3] (*id.* at 18) but
advised the IRS that Eaton may hold insurance policies through its sister
companies (*id.* at 15). As of April 2011, the IRS had not issued another Notice of
Levy to Defendants. (Doc. 40-1 at 15.) Therefore, the Agreement could only
possibly refer to the initial Notice of Levy, as it was the only Notice of Levy in
existence when the Agreement was finalized in 2009.[4] The document was
addressed to Unum Life, but nothing in the record suggests that Provident Life, as

---

[2] Because Defendants' motion to exclude certain exhibits to Eaton's briefs (Doc. 48) objects to
the use of Doc. 40 on parol evidence grounds, the motion is due to be denied as to Doc. 40. As
this Court did not rely on any of the other documents listed in the motion, the motion is due to be
granted as to those documents.
[3] Unum Life mailed two separate checks to the IRS representing payment for these commissions,
totaling $191.12, on August 17, 2006 and August 31, 2006. (Doc. 40 at 19, 20.)
[4] Also of note is the fact that counsel for Eaton in his earlier lawsuit participated in the drafting of
the Agreement and did not request Defendants' counsel to make any changes to the recital
mentioning a Notice of Levy received by Provident Life. (Docs. 47-1, 47-2.)

a sister company to Unum Life, did not also "receive [a copy of the] Notice of Levy" as described in the Agreement. In any event, regardless of the exact document to which the Agreement refers, no provision of the Agreement requires Provident Life to give Eaton a copy of the document before Eaton was able to perform according to the Agreement's terms.

On the contrary, the Agreement imposes upon Eaton an obligation to provide "direction" to Provident Life regarding the settlement funds before Provident Life is obligated to pay those funds. (Doc. 1-1 at 24.) Under the terms of the Agreement, Eaton could either (1) obtain direction from the IRS about how the funds could be distributed; (2) direct Provident Life to distribute the entire amount to the IRS; or (3) take no action and allow Provident Life to pay the entire amount to the IRS after eighteen months. (*Id.*) Neither Eaton nor Provident Life disputes that none of these three options has occurred. Eaton contends that he is not required to provide *any* direction under the Agreement—a position at odds with the Agreement's express terms—because the Agreement refers to a nonexistent Notice of Levy issued to Provident Life and because Defendants determined that the Notice of Levy dated August 2, 2006, "d[id] not attach to any monies payable to Mr. Eaton after August 30, 2006." (Doc. 40-1 at 15.) As support for this argument, Eaton offers communication from Provident Life regarding his disability

policies and a series of checks Provident Life issued to Eaton in 2008. These checks, according to Eaton, represent that Provident Life "needed no direction" to make payments to Eaton, despite the Levy. Eaton overlooks, however, that these checks in large part refunded premium payments Eaton had made to Provident Life before it determined that his disability policies were no longer in force. Even assuming that the premium refunds fall under the purview of the Levy, those payments do not contradict the unambiguous terms of the Agreement. The parties negotiated through counsel that Provident Life would not remit the settlement funds to Eaton absent some confirmation from the IRS that it had no claim to those funds. Other payments due to be made to Eaton were not included in the Agreement, which by its terms covered "Eaton's disputed claim for additional disability benefits under his individual disability policies." (Doc. 1-1 at 24.) With respect to the sum of $108,000 that Provident Life agreed to exchange for the release of Eaton's claims against it—that is, with respect to the settlement funds identified in the Agreement—Eaton was plainly required to take some action before Provident Life was obligated to make any payment to Eaton or to the IRS.

Eaton does not dispute that he never provided Provident Life with "direction from the IRS that the money can be paid to Eaton's counsel's client trust account [or] that a portion of the money can be paid to the IRS and a portion

be paid to plaintiff's counsel's client trust account." Nor did Eaton or his counsel instruct Provident Life to pay the $108,000 to the IRS. Eaton now contends that Provident Life breached the Agreement by not paying the $108,000 to the IRS by June 30, 2011, after Eaton provided no direction. Prior to that date, however, Eaton had attempted to challenge the Agreement, claiming in a letter to Defendants' counsel dated April 20, 2011, that the Agreement was "fatally flawed." Additionally, as Provident Life points out, neither party has ever signed the Agreement, so the automatic payment provision was never triggered. The Agreement states as follows: "The Parties agree that Eaton is responsible for providing the direction from the IRS or the direction from Eaton to pay the money to the IRS *within 18 months of the date the agreement is signed*. If Provident Life receives no such communication *within the 18 month period*, Provident Life will automatically pay the money to the IRS." (*Id.* (emphasis added).) Although the parties now agree that the Agreement is a valid and binding contract notwithstanding the fact that it was never signed, the automatic payment provision is unambiguously triggered by the Agreement's signing, which has not yet come to pass. Thus, because none of the three conditions precedent to Provident Life's obligation to remit the settlement funds has been satisfied, Provident Life has never been required to perform under the Agreement.

Eaton also contends that Defendants' communications with the IRS in 2011 and 2012 constitute a breach of the Agreement. In a letter to Defendants' counsel dated April 20, 2011, Eaton stated that he "would view such inquiry as a breach." (Doc. 38-2 at 3.) In support of his position, Eaton argues that "[t]he Agreement clearly expresses Eaton is solely responsible for providing satisfactory direction" regarding payment of the settlement funds. (Doc. 41-1 at 12.) The Agreement does provide that Eaton is responsible for supplying such direction "within 18 months of the date that the agreement is signed" but does not specify that Defendants are prohibited from contacting the IRS on Eaton's behalf.

The evidence in this matter demonstrates, in the aggregate, that Unum Life, a sister company of Provident Life, received a Notice of Levy dated August 2, 2006, advising it of Eaton's $500,000 tax debt. Regardless of the manner in which Defendants internally handled the Notice of Levy, it appears that at the time Eaton and Provident Life developed the Agreement in 2009, Provident Life was concerned that some of the $108,000 in settlement payments it had agreed to make to Eaton may be subject to a claim by the IRS. In an effort to make itself more secure that the IRS would not later file suit against it for making payment to Eaton, Provident Life contracted to release the funds only after Eaton obtained a statement from the IRS that it had no claim to the $108,000. Eaton never obtained

such a statement, nor did he direct Provident Life to pay the entire amount to the IRS in partial satisfaction of his tax debt. Instead, Eaton attempted to repudiate the Agreement by first refusing to sign it and later simply demanding payment of the $108,000 from Provident Life. Because Provident Life did not comply with Eaton's demands, Eaton filed the instant action.

Moreover, it is clear from the proceedings in this case that the IRS *does* have a claim to at least some of the settlement funds, rendering Provident Life's concerns in 2009 well-founded. After Provident Life interpleaded the settlement amount over Eaton's objection, the parties, including the IRS, stipulated that "the maximum payoff amount due from Eaton to the IRS as of October 31, 2016, will be $62,893.33." (Doc. 29 at 2.) The IRS also issued to this Court on September 23, 2016, a Notice of Levy informing this Court of the IRS's claim to $59,585.42 in unpaid taxes and statutory penalties for the 2004 tax year. (Doc. 54 at 2.) This Notice of Levy and the corresponding Stipulation for the Distribution of Interpleaded Funds (Doc. 56) render the majority of Eaton's arguments moot, as Provident Life has already paid Eaton $45,106.67 of the settlement funds and agreed to pay the IRS much of the remainder. (Doc. 38-8.) Defendants are thus entitled to summary judgment on this claim, and Eaton's Motion for Partial Summary Judgment is due to be denied.

### b.      Breach of Covenant of Good Faith and Fair Dealing

Eaton alleges in his Complaint that Defendants breached the Agreement's implied covenant of good faith and fair dealing by depriving him of the payments due to him under the Agreement. However, he has not responded to Defendants' arguments in favor of summary judgment on this claim and is therefore deemed to have abandoned it. *Clark v. City of Atlanta*, 544 F. App'x 848, 855 (11th Cir. 2013) (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)); *Resolution Trust Corp.*, 43 F.3d at 599 ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). "[A] party may not rely on his pleadings to avoid judgment against him." *Resolution Trust Corp.*, 43 F.3d at 599 (quoting *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.3d 641, 543 (11th Cir. 1986)). Defendants are thus entitled to summary judgment on this claim.

### c.      Negligent Misrepresentation, Fraudulent Inducement, and Fraud

Defendants contend that they are entitled to summary judgment as to Eaton's tort claims—negligent misrepresentation, fraudulent inducement, and fraud—because those claims are barred by the applicable two-year statute of limitations. These claims, all grounded in fraud, are subject to a two-year statute of limitations, which begins to run when a plaintiff discovers (or should have

discovered) "the fact constituting the fraud." *Bryant Bank v. Talmage Kirkland &*
*Co., Inc.*, 155 So. 3d 231, 235 (Ala. 2014) (noting that negligent misrepresentation,
like other fraud claims, is subject to the two-year limitations period in Ala. Code
§ 6-2-38(*l*)). "The question of when a party discovered or should have discovered
the fraud is generally one for the jury." *Potter v. First Real Estate Co.*, 844 So. 2d
540, 546 (Ala. 2002). However, "[t]he question of when a plaintiff should have
discovered fraud should be taken away from the jury and decided as a matter of law
only in cases where the plaintiff *actually knew* of facts that would have put a
reasonable person on notice of fraud." *McGowan v. Chrysler Corp.*, 631 So. 2d 842,
845 (Ala. 1993) (emphasis in original). Further, "a party will be deemed to have
'discovered' a fraud as a matter of law upon the first of either the actual discovery
of the fraud or when the party becomes privy to facts that would provoke inquiry in
a reasonable person that, if followed up, would lead to the discovery of the fraud."
*Dickinson v. Land Developers Constr. Co.*, 882 So. 2d 291, 298 (Ala. 2003).

In support of his claims, Eaton asserts that Defendants owed him a
contractual duty to communicate to him that the Levy never existed and that their
failure to do so constitutes fraud. Eaton further insists that Defendants continue to
suppress material facts regarding the Levy. However, Eaton's fraud claims are
time-barred. As early as April 20, 2011, Eaton wrote a letter to Defendants' counsel

claiming that the Agreement was "fatally flawed" because Provident Life was never served with an IRS levy. (Doc. 38-2.) Eaton wrote several other letters to Defendants' counsel during the summer of 2011, including a letter dated June 20, 2011, which referenced a "Unum Certification of Records" confirming that a levy addressed to Provident Life did not exist. (Doc. 38-4.) In his November 3, 2011 letter to Defendants' counsel, Eaton stated that Defendants falsely communicated that the Levy bound Provident Life as to the settlement proceeds and that Defendants' "continued delay to remit payment or even act in good faith to reform the agreement . . . illustrates that Provident fraudulently induced [Eaton] to enter into the settlement." (Doc. 38-6.)

Eaton responds that he is not an attorney and that he was not threatening to assert a legal claim of fraud but instead was trying to resolve the problem of performance under the Agreement. However, the November 3, 2011 letter plainly shows that Eaton knew or reasonably should have known at that point in time that the Levy either did not exist or did not apply to the settlement proceeds.[5] Eaton

---

[5] Further, to the extent that Eaton contends that Defendants are engaging in a continuing fraud, Eaton has offered no evidence that he continued to reasonably rely on any of Defendants' fraudulent statements or omissions. *See Davis v. Sterne, Agee & Leach, Inc.*, 965 So. 2d 1076, 1091–92 (Ala. 2007) (noting that to prevail on a claim of fraud, "the misrepresentation or suppression of the existing material fact must have led the plaintiff to act to his detriment in reasonable reliance thereon"). The fact that Eaton began questioning the existence or application of the Levy to the settlement indicates that he either did not rely on any statements or omissions regarding the Levy, or if he did, that reliance was not reasonable.

filed his complaint on June 15, 2015, more than two years after he became aware, or should have become aware, of facts that would provoke inquiry that would lead to the discovery of the fraud. Eaton's fraud claims are time-barred. Defendants are thus entitled to summary judgment on these claims.

### d.    Conspiracy to Defraud and Civil Conspiracy

Eaton alleges in his complaint that Defendants engaged specifically in a conspiracy to deprive him of his benefits under the Agreement through fraud and, more generally, in a conspiracy "to commit each of the wrongful and tortious acts" described in the complaint. Defendants assert that Eaton's conspiracy to defraud claim is barred by the statute of limitations and that Alabama law does not recognize a claim for conspiracy to breach a contract. Eaton failed to respond to Defendants' arguments in favor of summary judgment as to these two claims, so the claims are deemed abandoned for the reasons stated above in III.b. Defendants are thus entitled to summary judgment on Eaton's conspiracy to defraud and civil conspiracy claims.

### e.    Unjust Enrichment

Eaton argues that Defendants have been unjustly enriched by refusing to pay him the settlement funds pursuant to the Agreement. A claim for unjust enrichment requires that (1) the defendant knowingly accept and retain a benefit (2) provided by another (3) who has a reasonable expectation of compensation. *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008). The plaintiff will prevail if he demonstrates that the defendant "holds money which, in equity and good conscience, belongs to the plaintiff." *Mantiply v. Mantiply*, 951 So. 2d 638, 654 (Ala. 2006) (emphasis deleted). Here, Defendants have not unjustly withheld the settlement funds. It is undisputed that Eaton did not obtain the direction from the IRS required by the terms of the Agreement or direct Defendants to pay the funds to the IRS, nor did he sign the Agreement so as to trigger the automatic payment provision. Because none of these three conditions was satisfied, Defendants were never obligated to make payment to Eaton. Moreover, after receiving guidance from the IRS during the course of this litigation that the IRS would seek only $62,893.33 of the $108,000 in settlement funds, Defendants promptly paid Eaton the remaining $45,106.67 balance. Eaton's alternative argument that a contract was never formed because Defendants failed to satisfy the condition precedent of providing him with a copy of the Notice of Levy

fails given the unambiguous terms of the Agreement. Defendants are thus entitled to summary judgment on this claim.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Doc. 36) is due to be GRANTED, and Eaton's motion for partial summary judgment (Doc. 41) is due to be DENIED. Defendants' motion to exclude (Doc. 48) is due to be GRANTED IN PART AND DENIED IN PART. A separate order consistent with this opinion will be entered.

**DONE** AND **ORDERED** ON November 17, 2016.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

186289